## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACKIE JAMES, | : | CIVIL NO: 3:19-CV-00270 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| KARA N. TEMPLETON, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I.  Introduction.

Plaintiff Jackie James claims that the defendant—Kara N. Templeton, the Director of the Bureau of Driver Licensing with the Pennsylvania Department of Transportation ("PennDOT")—downgraded his Commercial Driver's License ("CDL") to a regular license without due process.  Currently pending is Templeton's motion for summary judgment.  For the reasons discussed below, we will deny that motion for summary judgment without prejudice.

### II.  Background and Procedural History.

James began this action by filing a complaint in February 2019, and a couple of months later, Templeton filed an answer to the complaint.  A year after that, the parties consented to proceed before a magistrate judge pursuant to 28 U.S.C.

§ 636(c), and the case was referred to the undersigned.  James then filed an amended complaint on October 5, 2020.

The amended complaint names Templeton as the only defendant. Templeton is sued in both her individual and official capacities. The amended complaint contains one count—a procedural due process claim.  James alleges that he had a property interest in his CDL, which he received in 2016.  But in December of 2018, Templeton removed his CDL from him without first providing him a due process hearing, without providing the evidence against him about why his CDL was being removed, and without giving him an opportunity to rebut any evidence against him. *Doc. 20* ¶¶ 5, 7, 10, 11.  According to James, he had been offered a job that paid $85,000 annually, but because of the removal of his CDL, he could not accept that job. *Id.* ¶¶ 13, 15.

James suggests he was entitled to a meaningful pre-deprivation hearing, and because there were no extraordinary circumstances, a post-deprivation remedy does not excuse the failure to hold a pre-deprivation hearing. *Id.* ¶¶ 16–22.  As relief, James "seeks all remedies available pursuant to [42] U.S.C. § 1983 including but not limited to reinstatement of his CDL license, clearing of his driving record, lost wages, future wages, emotional distress, punitive damages, attorney fees and costs, pre- and post-interest, and delay damages." *Id.* at 5 (Wherefore Clause).

After Templeton filed an answer to the amended complaint and after the discovery deadline passed, Templeton filed a motion for summary judgment. That motion has been briefed, and for the reasons discussed below we will deny the motion without prejudice.

### III.  Summary Judgment Standards.

Templeton moves for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011) (quoting Fed. R. Civ. P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that

burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322.

Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for

trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248.  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248–49.

When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)).  At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249.  The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322.  "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002) (quoting *Celotex,* 477 U.S. at 323).  "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

## IV.  Material Facts.

The following facts are the material facts for purposes of the pending summary judgment motion.[1]

PennDOT permitted the Luzerne County Community College ("LCCC") to certify individuals for possession of a CDL. *Doc. 43* ¶ 1; *Doc. 46* ¶ 1.  Due to an investigation into irregularities in the testing by a particular LCCC

---

[1]  Here, in accordance with Local Rule 56.1, Templeton filed a statement of material facts, and James filed a response.  When citing to page numbers of a document, we use the page numbers from the CM/ECF header on the top of the document.

instructor named Michael Jordan, PennDOT required 177 individuals to re-take the CDL test, as it could not be determined if they had been given an appropriate test. *Doc. 43* ¶ 2; *Doc. 46* ¶ 2.[2]  This was a matter of public safety. *Doc. 43* ¶ 2; *Doc. 46* ¶ 2.[3]

James was tested by Michael Jordan, and he was included in the 177 individuals who were required to re-take the test. *Doc. 43* ¶ 3; *Doc. 46* ¶ 3.[4]

_____

[2]  Although James purports to deny this statement of fact, he points to no record evidence to support a denial.  Thus, in accordance with M.D. Pa. L.R. 56.1, this statement of fact is deemed admitted.

[3]  Templeton cites the testimony of Laura Krol, the Driver Safety Division Manager at PennDOT. *See doc. 43* ¶ 2 (citing, *inter alia*, Exhibit A at 14: 12-22 (Krol's testimony)).  Krol testified that the primary concern of PennDOT regarding the investigation and impropriety regarding the LCCC was "highway safety and making sure that the drivers that were licensed have the appropriate skills and meet the requirements of the required test that the Pennsylvania Department of Transportation has the responsibility of administering." *Doc. 43-1* at 22 (Transcript p. 14).  Templeton also cites to the testimony of Pennsylvania State Trooper George Layaou in support of some facts. *See doc. 43* ¶ 2.  But the portions of Trooper Layaou's testimony cited in this regard do not mention public safety. James, nevertheless, contends that Templeton's citation to the record "does not support that the alleged 'retesting' was a matter of public safety since the Trooper was not an expert witness." *Doc. 46* ¶ 2.  As noted above, Templeton cites to Krol's testimony regarding highway safety.  And although James purports to deny this statement of fact, he points to no record evidence to support a denial.  Thus, in accordance with M.D. Pa. L.R. 56.1, this statement of fact is deemed admitted.

[4]  James contends that Templeton's citation to the record "does not support that just because one of Plaintiff's examiners was Michael Jordan that should have caused the stripping of Plaintiff's CDL license or the requirement that he be 'retested.'" *Doc. 46* ¶ 3.  In support of his denial, James points to parts of Krol's testimony. *Id*. Although we understand that it is James's position that he should not have been required to be retested, there is no genuine dispute that James fell within the 177

PennDOT contacted James by letters in May and June 2018, to inform him that

if he did not re-take the CDL test, his license would be downgraded to regular

status. *Doc. 43* ¶ 4; *Doc. 46* ¶ 4.[5]  James declined to be retested. *Doc. 43* ¶ 5;

*Doc. 46* ¶ 5.[6]  His license was downgraded to regular status in December 2018.

*Doc. 43* ¶ 6; *Doc. 46* ¶ 6.[7]

James later had a hearing regarding the downgrading of his CDL in the

Court of Common Pleas, where he was denied relief. *Doc. 43* ¶ 7; *Doc. 46* ¶ 7.[8]

---

individuals who PennDOT determined were required to retake the test.  Thus, in accordance with M.D. Pa. L.R. 56.1, this statement of fact is deemed admitted.

[5]  Although James purports to deny this statement of fact in part, he points to no record evidence to support a denial.  Thus, in accordance with M.D. Pa. L.R. 56.1, this statement of fact is deemed admitted.

[6]  James asserts that this statement is "Denied as stated." *Doc. 46* ¶ 5.  He explains why he refused to retake the test. *Id*.  But he points to no record evidence to dispute that he refused to be retested.  Thus, in accordance with M.D. Pa. L.R. 56.1, this statement of fact is deemed admitted.

[7]  Contending that his CDL license was downgraded without due process, James purports to deny this statement of fact in part.  Again, however, he points to no record evidence to support a denial.  Thus, in accordance with M.D. Pa. L.R. 56.1, this statement of fact is deemed admitted.

[8]  James admits in part and denies in part this statement of fact. *Doc. 46* ¶ 7.  He admits that "a hearing was provided by the Luzerne County Court of Common Pleas," but he points out that the issue of whether he was provided due process in connection with the downgrading of his license was not addressed at this hearing. *Id*.  As the opinion of Judge Vough shows, the issue in the Court of Common Pleas was whether PennDOT properly downgraded James's CDL after he refused to be retested. *See doc. 43-1* at 8–11.  This was an issue regarding state law, and it is not surprising that whether James was provided due process in accordance with the United States Constitution was not addressed at that hearing.  This is especially so

He appealed this ruling to the Commonwealth Court, where he was also denied

relief. *Doc. 43* ¶ 8; *Doc. 46* ¶ 8.[9]

## V.  Discussion.

James claims that Templeton denied him due process by not providing him

with a pre-deprivation opportunity to be heard.

The Fourteenth Amendment provides that a state shall not "deprive any

person of life, liberty, or property, without due process of law." U.S. CONST.

amend XIV, §1.  "The core concept of due process is protection against arbitrary

government action," and due process has "both substantive and procedural

components." *Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 658 (3d Cir. 2011).

Here, James's due process claim is a procedural due process claim.

---

since it is PennDOT's position that it was that hearing itself that was the process
that James was due.  Because James points to no record evidence to support a
denial of Templeton's statement regarding this hearing, in accordance with M.D.
Pa. L.R. 56.1, Templeton's statement of fact is deemed admitted.

[9]  Although James purports to deny in part this statement of fact, his denial does
not address this statement of fact.  Rather, James asserts that "due to the inability to
address concerns of due process and leaving the record open, the evidence that
Plaintiff had passed a second CDL road test in and around the same time
Defendant was going to strip his CDL license should have shown that Plaintiff was
rightfully issued a CDL license[,] [and] there was no need for Plaintiff to retake a
CDL license." *Doc. 46* ¶ 8.  As James's denial does not address Templeton's
statement of fact, in accordance with M.D. Pa. L.R. 56.1, Templeton's statement of
fact in this regard is deemed admitted.

"The requirement that the government afford due process of law to the entities and individuals with whom it deals applies only in situations in which the governmental action implicates some protected life, liberty, or property interest of the entity or individual." *Fantone v. Latini*, 780 F.3d 184, 188 (3d Cir. 2015). Thus, the court must determine whether the interest asserted by the plaintiff is within the scope of protection of life, liberty, or property found in the Due Process Clause. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). If the interest is one that is protected by the Due Process Clause, "the question then becomes what process is due to protect it." *Id.*

Here, Templeton does not dispute that James had a property interest in his CDL. *See doc. 44* at 5 ("Once a driver's license is issued to an individual, a property interest in that driver's license is created."). Because James had a property interest in his CDL, the question is whether he was provided with the process he was due.

"To determine what process is due in a particular situation, courts consider three factors: first, the private interest at stake; second, the risk of erroneous deprivation of that interest through the procedures used and the probable value of different procedures; and third, the government's interest." *Mulholland v. Gov't County of Berks,* 706 F.3d 227, 238 (3d Cir. 2013) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

"The core of due process is the right to notice and a meaningful opportunity to be heard." *LaChance v. Erickson,* 522 U.S. 262, 266 (1998).  "That opportunity 'must be granted at a meaningful time and in a meaningful manner.'" *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 417 (3d Cir. 2008) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  "In the typical situation, the hearing should come before the Government deprives a person of his property." *Id*. "This makes practical sense, '[f]or when a person has an opportunity to speak up in his own defense, and when the State must listen to what he has to say, substantively unfair and simply mistaken deprivations of property interests can be prevented.'" *Id*. (quoting *Fuentes v. Shevin,* 407 U.S. 67, 81 (1972)).

Hence, "[a]s a default matter, '[i]n situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation . . . remedy to compensate for the taking.'" *Montanez v. Sec'y Pennsylvania Dep't of Corr.*, 773 F.3d 472, 483 (3d Cir. 2014) (quoting *Zinermon v. Burch,* 494 U.S. 113, 132 (1990)).  "Thus, where the pre-deprivation safeguards 'would be of use in preventing the kind of deprivation alleged,' the state must provide such a hearing." *Id*. (quoting *Zinermon,* 494 U.S. at 139).

But a pre-deprivation "hearing" does not necessarily mean an evidentiary hearing.  "Ordinarily, a pre-deprivation hearing 'need not be elaborate.'" *Schmidt*

11

*v. Creedon*, 639 F.3d 587, 596 (3d Cir. 2011) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985)).  And "[i]n general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." *Loudermill*, 470 U.S. at 545 (quoting *Matthews*, 424 U.S. at 343).  Often "[w]here adequate post-deprivation procedures are available," an individual "is entitled only to 'notice of the charges against him, an explanation of the [] evidence, and an opportunity to present his side of the story." *Schmidt*, 639 F.3d at 596 (quoting *Loudermill*, 470 U.S. at 545).  "The hearing can be informal and 'need not definitively resolve the propriety' of the deprivation." *Id.* (quoting *Loudermill*, 470 U.S. at 545).  "It should be an initial check against mistaken decisions— essentially, a determination of whether there are reasonable grounds to believe that the charges against the [individual] are true and support the proposed action." *Id.* at 596–97 (quoting *Loudermill*, 470 U.S. at 545).

Further, in limited circumstances, a post-deprivation hearing may satisfy due process such as where there is an emergency that requires "'quick action by the State,' or where 'providing any meaningful predeprivation process' would be impractical." *Elsmere Park Club*, 542 F.3d at 417 (quoting *Parratt v. Taylor*, 451 U.S. 527, 539 (1981)); *see also Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 240 (1988) ("An important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases

demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation.").

The Supreme Court addressed due process claims regarding driver's license suspensions or revocations in several cases. Both parties cite *Bell v. Burson*, 402 U.S. 535 (1971).[10] *Bell* involved a challenge to a Georgia law that "provide[d] that the motor vehicle registration and driver's license of an uninsured motorist involved in an accident shall be suspended unless he posts security to cover the amount of damages claimed by aggrieved parties in reports of the accident." *Id*. at 535–36 (footnote omitted). Under that law, there was an opportunity for a pre-suspension administrative hearing, but that hearing "exclude[d] consideration of the motorist's fault or liability for the accident." *Id*. at 536. There was also the opportunity for a statutory appeal *de novo* after the suspension. *Id*. at 538. After concluding that once issued, a driver's license cannot be taken away without procedural due process, the Court determined that because liability for the accident was "an important factor in the State's determination to deprive an individual of his license[], the State may not, consistently with due process, eliminate consideration of that factor in its prior hearing." *Id*. at 539, 541. The Court

---

[10] Templeton cites *Bell* merely for the proposition that once a driver's license is issued, an individual has a property interest in this license. *See doc. 44* at 5. James also cites *Bell* for that proposition as well as for the proposition that he was entitled to a pre-deprivation haring. *See doc. 45* at 5, 6.

rejected Georgia's contention that liability for the accident need not be considered

prior to the suspension:

> Finally, we reject Georgia's argument that if it must afford the
> licensee an inquiry into the question of liability that
> determination, unlike the determination of the matters presently
> considered at the administrative hearing, need not be made prior
> to the suspension of the licenses. While "[m]any controversies
> have raged about . . . the Due Process Clause," it is fundamental
> that except in emergency situations (and this is not one) due
> process requires that when a State seeks to terminate an interest
> such as that here involved, it must afford "notice and
> opportunity for hearing appropriate to the nature of the case"
> *before* the termination becomes effective.

*Id.* at 542 (italics in original) (footnote omitted) (quoting *Mullane v. Cent. Hanover*

*Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)).  The Court held that before Georgia

"may deprive petitioner of his driver's license and vehicle registration it must

provide a forum for the determination of the question whether there is a reasonable

possibility of a judgment being rendered against him as a result of the accident."

*Id*.

After *Bell*, the Supreme Court decided the seminal due process case of

*Mathews v. Eldridge*, 424 U.S. 319 (1976).  Highlighting that due process is

flexible and what process is due depends on the context and a balance of

governmental and private interests, *Matthews* set forth three factors for analyzing

procedural due process claims. *Id*. at 334–35.  Those factors are: "(1) the interest at

stake for the individual []citizen; (2) 'the risk of an erroneous deprivation of such

interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *B.C. v. Att'y Gen. United States*, 12 F.4th 306, 314–15 (3d Cir. 2021) (quoting *Matthews*, 424 U.S. at 335). The *Matthews* factors are used "[t]o determine what procedures the Constitution requires in a particular case, including whether pre-deprivation procedures are required and whether post-deprivation procedures are constitutionally adequate[.]" *Doe I v. Governor of Pennsylvania*, 977 F.3d 270, 275–76 (3d Cir. 2020) (Fisher, J., concurring).

In other cases involving driver's licenses decided after *Matthews*, the Supreme Court determined that due process did not require a pre-suspension evidentiary hearing. For example, in *Dixon v. Love*, 431 U.S. 105, 106 (1977), the Court addressed "whether Illinois has provided constitutionally adequate procedures for suspending or revoking the license of a driver who repeatedly has been convicted of traffic offenses." In that case, "[t]he statute and administrative regulations provide[d] for an initial summary decision based on official records, with a full administrative hearing available only after the suspension or revocation ha[d] taken effect." *Id.* After analyzing the *Matthews* factors, the Court held that in

the context of the Illinois scheme, an evidentiary hearing was not required prior to suspension or revocation of a driver's license. *Id*. at 113–15.

Similarly, in *Mackey v. Montrym*, 443 U.S. 1, 19 (1979), the Court held that "a summary suspension effective pending the outcome of [a] prompt postsuspension hearing" satisfied due process.  That case involved a Massachusetts statute that mandated the suspension of the license of a driver who refused to take a breath-analysis test after being arrested for driving under the influence. *Id*. at 3.  Before concluding that a pre-suspension evidentiary hearing was not required in that case, the Court analyzed the *Matthews* factors. *Id*. at 10–19.[11]

Here, the parties do not address *Dixon* or *Mackey*.  More importantly, although the *Matthews* factors are the applicable factors for determining whether the specific mix of pre- and post-deprivations procedures available satisfies due process, the parties do not specifically address those factors.[12]

And we conclude that Templeton's argument in her brief in support is insufficient to show that she is entitled to summary judgment.  After setting forth

---

[11]  In *Illinois v. Batchelder*, 463 U.S. 1112, 1117–19 (1983), the Court also analyzed the *Matthews* factors in upholding a license suspension pursuant to Illinois' implied-consent statute.  In that case, the issue concerned how specific the affidavit required of the arresting officer had to be. *Id*. at 1115, 1117 n.3.  Under that statutory scheme, the driver had a right to a hearing before his license was suspended. *Id*. at 1117–19.

[12]  James does touch on the first factor—the interest at stake. *See doc. 45* at 5.

some general due process standards and summarizing the facts in this case, the

totality of Templeton's argument consists of one conclusory paragraph:

> It cannot be said that Plaintiff was denied his due process
> rights when, firstly, he refused multiple requests to re-test over
> the course of several months, and secondly, availed himself of
> an appropriate post-deprivation hearing, although he is clearly
> dissatisfied with the results.  This hearing meets the required
> due process standard.  As the Defendant has not violated the
> Fourteenth Amendment, summary judgment should be granted
> in her favor.

*Doc. 44* at 6 (footnote omitted).[13]  Templeton does not point to a case that is

factually analogous to this case.  Rather, she cites cases from vastly different

contexts without making any attempt to show how or why those cases apply in this

case.  For example, Templeton cites *Postie v. Frederick*, 3:14-00317, 2015 WL

1219263, at *3 (M.D. Pa. Mar. 17, 2015), and *McKenna v. Portman*, 538 F. App'x

221, 224 (3d Cir. 2013), for the proposition that a post-deprivation remedy may

satisfy due process. *See doc. 44* at 5.  Both of those cases concerned property that

---

[13]  In a footnote, Templeton cites to *Pascarella v. Swift Transp. Co.*, 643 F. Supp.
2d 639 (D.N.J. 2009), a case that also involved the revocation of a CDL license
based on the contention that the CDL test administered by a third party failed to
comply with state rules and regulations.  *Pascarella* is distinguishable from this
case because in that case there was an opportunity for a pre-deprivation review and
hearing. *See id*. at 644 ("The Motor Vehicle Commission provides for a pre-
deprivation review and hearing before revocation of a driver's license, and that
opportunity was available to Plaintiff herein.").

was seized pursuant to a search warrant, but Templeton does not explain how that situation is analogous to situation in this case.

In further support of her contention that a post-deprivation hearing satisfies due process, Templeton cites *Doheny v. Pennsylvania*, 781 F. App'x 106 (3d Cir. 2019). In that case, the plaintiff's driver's license was suspended after he was convicted and sentenced for two violations of the Pennsylvania Vehicle Code. *Id.* at 108. Citing *Dixon*, the court stated: "While the Fourteenth Amendment's Due Process Clause applies to the deprivation of a driver's license, a post-deprivation hearing and appeal process satisfy due process." *Id.* at 113. As an unpublished decision, *Doheny* is not binding on this court. Moreover, *Doheny* is distinguishable from this case. Here, James contends that he was not provided with a pre-deprivation opportunity to be heard. But in *Doheny*, the court noted that PennDOT notified Doheny "of a thirty-day window to appeal the suspensions before they became effective." *Id.* Templeton does not assert that there was any such pre-suspension window for appeal for James in this case. Nor does she address the importance—or unimportance—of that distinction.

And as set forth above, a post-deprivation hearing may satisfy due process where there is an emergency requiring quick action or where providing meaningful pre-deprivation process would be impractical. But Templeton does not argue that

there was an emergency or that providing some, however informal, pre-deprivation process would have been impractical.

In sum, given the deficient briefing, we conclude that Templeton has not shown that she is entitled to judgment as a matter of law. Thus, we will deny her motion for summary judgment. Because "[t]he *Mathews* balancing test is to be applied by the court, as a question of law, and *not* by a jury," *Smith v. Borough of Dunmore*, No. 3:05-CV-1343, 2011 WL 1541293, at *2 (M.D. Pa. Apr. 22, 2011) (italics in original), we will deny Templeton's motion for summary judgment without prejudice to her filing another motion that is properly briefed and supported.

Although we will deny Templeton's motion for summary judgment, for the parties' guidance regarding a renewed motion for summary judgment, we make several comments. In addition to arguing that he was entitled to pre-deprivation process, in his brief in opposition, James argues that the post-deprivation hearing that he had did not satisfy due process because the court refused to address the issue of due process at that hearing. As Templeton points out, this argument is circular. And as noted above, *see supra* note 8, the issue in the Court of Common Pleas was whether PennDOT properly downgraded James's CDL after he refused to be retested. *See doc. 43-1* at 8–11. This was an issue regarding state law, and it

is not surprising that whether James was provided due process in accordance with the United States Constitution was not addressed at that hearing.

James also suggests that the post-deprivation hearing did not provide due process because no evidence was introduced that he did anything to cause his CDL to be stripped from him.  But in connection with a procedural due process claim, the question is whether appropriate process was provided, not whether the correct result was reached.  Here, as Templeton points out in her reply brief, the transcript of the hearing shows that James "was given the opportunity to cross examine the Commonwealth's witnesses, review documents, and present his own evidence." *Doc. 48* at 7.  That James disagrees with the outcome of the hearing does not bear on whether the process provided was sufficient.

Although we are not deciding whether the post-deprivation hearing was sufficient to satisfy due process, James's arguments that the hearing was deficient because it did not address his due process claim and because no evidence was introduced that he did anything to cause his CDL to be stripped from him is without merit.

We also note that in his opinion denying James's appeal, Judge Vough ordered that "the downgrade of Petitioner's commercial driver's license to a non-commercial Class C is reinstated." *Doc. 43-1* at 8.  Use of the word "reinstated" may suggest that James was able to use his CDL while his appeal was pending.

20

And whether he was able to use his CDL while his appeal was pending may bear on the *Matthews* factors.  But the parties have not addressed that issue.  They should do so in connection with any subsequent motion for summary judgment.

## VI.  Conclusion.

For the foregoing reasons, we will deny Templeton's motion (*doc. 40*) for summary judgment without prejudice.  An appropriate order follows.

<u>*S/Susan E. Schwab*</u>
Susan E. Schwab
United States Magistrate Judge