## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JACKIE JAMES,                    :      CIVIL NO: 3:19-CV-00270
                                 :
                Plaintiff,       :      (Magistrate Judge Schwab)
                                 :
        v.                       :
                                 :
KARA N. TEMPLETON,               :
                                 :
                Defendant.       :

## MEMORANDUM OPINION

### I.  Introduction.

Plaintiff Jackie James claims that the defendant—Kara N. Templeton, the Director of the Bureau of Driver Licensing with the Pennsylvania Department of Transportation ("PennDOT")—downgraded his Commercial Driver's License ("CDL") to a regular license without due process.  Currently pending is Templeton's second motion for summary judgment.  For the reasons discussed below, we will grant that motion for summary judgment.

### II.  Background and Procedural History.

James began this action by filing a complaint in February 2019, and a couple of months later, Templeton filed an answer to the complaint. *Docs. 1, 6*.  A year after that, the parties consented to proceed before a magistrate judge pursuant to 28

U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 13*.  James then filed an amended complaint on October 5, 2020. *Doc. 20*

The amended complaint names Templeton as the only defendant, and it contains one count—a procedural due process claim. *Id*. at 1-5.  James alleges that he had a property interest in his CDL, which he received in 2016. *Id*. ¶¶ 5, 7.  But in December of 2018, Templeton removed his CDL from him without first providing him a due process hearing, without providing the evidence against him about why his CDL was being removed, and without giving him an opportunity to rebut any evidence against him. *Id*. ¶¶ 10, 11.  According to James, he had been offered a job that paid $85,000 annually, but because of the removal of his CDL, he could not accept that job. *Id*. ¶¶ 13, 15.

James suggests he was entitled to a meaningful pre-deprivation hearing, and because there were no extraordinary circumstances, a post-deprivation remedy does not excuse the failure to hold a pre-deprivation hearing. *Id*. ¶¶ 16–22.  As relief, James "seeks all remedies available pursuant to [42] U.S.C. § 1983 including but not limited to reinstatement of his CDL license, clearing of his driving record, lost wages, future wages, emotional distress, punitive damages, attorney fees and costs, pre- and post-interest, and delay damages." *Id*. at 5 (Wherefore Clause).

After Templeton filed an answer to the amended complaint and after the discovery deadline passed, Templeton filed a motion for summary judgment. *See doc. 40.* We denied that motion, but we did so without prejudice to Templeton filing a second motion for summary judgment. *Docs. 49, 50.*

On June 9, 2022, Templeton filed a second motion for summary judgment. *Doc. 55.* She also filed several motions for extensions of time to file her statement of material facts and brief in support of that motion. *Docs. 56, 59, 63.* We granted those motions. *Docs. 57, 61, 64.* But before Templeton filed her statement of material facts and brief in support, issues regarding James's counsel—Cynthia Pollick—came to light. Pollick informed the court that she had been incarcerated, that her law license was about to expire, and that her law license likely will not be renewed. *See docs. 58, 60.* After additional orders and filings, we granted Pollick's request to withdraw as counsel. *See docs. 62, 65–67.* We also ordered the Clerk of Court to note James's address on the docket and to send him copies of the pertinent documents. *Doc. 67 at 2.* And in order to allow James time to find replacement counsel, we stayed all briefing as to Templeton's second summary judgment motion pending further order of the court. *Id.* Finally, we ordered James to inform the court, on or before September 9, 2022, whether he obtained replacement counsel or whether he intended to proceed with this case pro se. *Id.* at 2–3.

Replacement counsel did not enter an appearance for James, and James did not otherwise respond to the court's order.  Thus, we lifted the stay of the briefing on the motion for summary judgment. *Doc. 68*.  After Templeton requested and received further extensions of time, *docs. 69–72*, she filed her statement of material facts (with supporting documents) and brief on December 30, 2022, *docs. 73, 74*.

We then ordered James to respond to the motion for summary judgement. *See doc. 75*.  After he requested and received an extension of time, *docs. 76, 77*, on February 23, 2023, he filed a document titled "Plaintiff's Response to Defendant's Statement of Undisputed Material Facts" along with two exhibits, *doc. 78*. Although titled as a response to Templeton's statement of undisputed material facts, this document does not respond to the numbered paragraphs of Templeton's statement as required by Local Rule 56.1.  This document does, however, contain legal argument, and we will construe it liberally as a brief in opposition to the motion for summary judgment.

For the reasons discussed below, we will grant Templeton's second motion for summary judgment.

## III.  Summary Judgment Standards.

Templeton moves for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011) (quoting Fed. R. Civ. P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed.

R. Civ. P. 56(c).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322.

Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248.  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248–49.

When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N.*

6

*Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)).  At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249.  The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322.  "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002) (quoting *Celotex,* 477 U.S. at 323).  "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

7

## IV.  Material Facts.

Local Rule 56.1 requires a party moving for summary judgment to file "a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. Pa. L.R. 56.1.  The Rule, in turn, requires the non-moving party to file "a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required [by the moving party], as to which it is contended that there exists a genuine issue to be tried." *Id.*  The "[s]tatements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements," and "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party." *Id.*  "Local Rule 56.1 was promulgated to bring greater efficiency to the work of the judges of the Middle District." *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018).  "[T]he Rule 'is essential to the Court's resolution of a summary judgment motion' due to its role in 'organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side proposed to prove a disputed fact with admissible evidence.'" *Id*. (citations omitted).

8

Here, in accordance with M.D. Pa. 56.1, Templeton filed a statement of material facts with citations to the record, *see doc. 73*, and supporting documents, *see docs. 73-1–73-10*. As noted above, James filed a document titled "Plaintiff's Response to Defendant's Statement of Undisputed Material Facts" along with two exhibits. *Doc. 78.* Although titled as a response to Templeton's statement of undisputed material facts, this document does not respond to the numbered paragraphs of Templeton's statement as required by Local Rule 56.1. We are aware of our duty to "construe all facts and inferences in favor of the nonmoving party[,]" *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Santini v. Fuentes*, 795 F.3d 410, 419 (3d Cir. 2015)), but because James has not properly responded to Templeton's statement of material facts nor has not cited evidence to create a genuine factual dispute, we accept the facts set forth by Templeton. Thus, the following facts are the material facts for purposes of the pending summary judgment motion.

PennDOT permitted the Luzerne County Community College ("LCCC") to certify individuals for possession of a CDL. *Doc. 73* ¶ 1. Due to an investigation into irregularities in the testing by a particular LCCC instructor, PennDOT required 177 individuals to re-take the CDL test, as it could not be determined if they had been given an appropriate test. *Id.* ¶ 2. This was a matter of public safety. *Id.*

James was included in the 177 individuals who were required to re-take the test. *Id.* ¶ 3.   PennDOT contacted James by letters in May and June 2018, to inform him that if he did not re-take the CDL test, his license would be downgraded to regular status. *Id.* ¶ 4.  James declined to be retested. *Id.* ¶ 5. His license was downgraded to regular status in December 2018. *Id.* ¶ 6.  He was informed of such by a letter dated December 10, 2018. *Doc. 73-6* at 2. James appealed that downgrade to the Court of Common Pleas of Luzerne County, Pennsylvania. *Doc. 73-9* at 8.  Pursuant to 75 Pa. C.S.A. § 1550(b)(1)(i), which acts as a supersedeas,[1] James retained his license while his appeal was pending. *Doc. 73* ¶ 9.[2]

---

[1] "'In modern times [supersedeas] is often used synonymously with a 'stay of proceedings,' and is employed to designate the effect of an act or proceeding which of itself suspends the enforcement of a judgment."' *Tourscher v. McCullough*, 184 F.3d 236, 241 n.3 (3d Cir. 1999) (quoting Black's Law Dictionary 1437–38 (6th ed. 1990)).

[2] 75 Pa. C.S.A. § 1550(a) provides, in pertinent part: "Any person . . . whose commercial driver's license designation has been removed . . . by the department shall have the right to appeal to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure)."   And Section 1550(b)(1)(i) provides that "[e]xcept as provided in subparagraphs (ii) and (iii), filing and service of a petition for appeal from a suspension or revocation shall operate as a supersedeas until final determination of the matter by the court vested with the jurisdiction of such appeals."   In the context of Section 1550(b)(1)(i), "[t]he 'primary purpose of an automatic supersedeas . . . is to afford licensees a hearing and the opportunity for judicial review on the propriety of [PennDOT's] action before their driving privileges are suspended.'" *Ganoe v. Dep't of Transportation, Bureau of Driver Licensing*, 247 A.3d 91, 96 (Pa.

James had a hearing regarding the downgrading of his CDL in the Court of Common Pleas, where he was denied relief. *Id.* ¶ 7.  He appealed that ruling to the Commonwealth Court, where he was also denied relief. *Id.* ¶ 8.

## V.  Discussion.

James claims that Templeton denied him due process by not providing him with a pre-deprivation opportunity to be heard.

The Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend XIV, §1.  "The core concept of due process is protection against arbitrary

---

Commw. Ct. 2021) (quoting *Riddle v. Com., Dep't of Transp.*, 583 A.2d 865, 868 (Pa. Commw. Ct. 1990)).  The parties do not address the applicability of any exception to the automatic supersedeas of Section 1550(b)(1)(i).  In any event, in an order dated January 4, 2019 (the same date that James submitted his appeal), a de novo hearing was scheduled by the Court Administrator, and that Order provided: "Pending hearing, the filing of the attached Petition for Appeal and Order Scheduling De Novo Hearing shall serve as a supersedeas, as provided in 75 Pa.C.S.A. § 1550(b)(1)(i)." *Doc. 73-10*.  Further, James does not dispute Templeton's statement that "[w]hile his appeal was pending, [James] elected to retain his license pursuant to 75 Pa. C.S.A. § 1550(b)(1)(i), which acts as a supersedeas to the suspension." *Doc. 73* ¶ 9.  We also note that in his order denying James's appeal, Judge Vough of the Court of Common Pleas of Luzerne County ordered that "the downgrade of [James's] commercial driver's license to a non-commercial Class C is reinstated." *Doc. 73-9* at 4.  Thus, we deem it undisputed that James's appeal acted as a supersedeas, and he retained his CDL designation while that appeal was pending.

government action," and due process has "both substantive and procedural components." *Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 658 (3d Cir. 2011). Here, James's due process claim is a procedural due process claim.

"The requirement that the government afford due process of law to the entities and individuals with whom it deals applies only in situations in which the governmental action implicates some protected life, liberty, or property interest of the entity or individual." *Fantone v. Latini*, 780 F.3d 184, 188 (3d Cir. 2015). Thus, the court must determine whether the interest asserted by the plaintiff is within the scope of protection of life, liberty, or property found in the Due Process Clause. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). If the interest is one that is protected by the Due Process Clause, "the question then becomes what process is due to protect it." *Id.*

Here, Templeton does not dispute that James had a property interest in his CDL. *See doc. 74* at 7. Because James had a property interest in his CDL, the question is whether he was provided with the process that he was due.

"To determine what process is due in a particular situation, courts consider three factors: first, the private interest at stake; second, the risk of erroneous deprivation of that interest through the procedures used and the probable value of different procedures; and third, the government's interest." *Mulholland v. Gov't*

*County of Berks,* 706 F.3d 227, 238 (3d Cir. 2013) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

"The core of due process is the right to notice and a meaningful opportunity to be heard." *LaChance v. Erickson,* 522 U.S. 262, 266 (1998). "That opportunity 'must be granted at a meaningful time and in a meaningful manner.'" *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 417 (3d Cir. 2008) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "In the typical situation, the hearing should come before the Government deprives a person of his property." *Id.* "This makes practical sense, '[f]or when a person has an opportunity to speak up in his own defense, and when the State must listen to what he has to say, substantively unfair and simply mistaken deprivations of property interests can be prevented.'" *Id.* (quoting *Fuentes v. Shevin,* 407 U.S. 67, 81 (1972)).

Hence, "[a]s a default matter, '[i]n situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation . . . remedy to compensate for the taking.'" *Montanez v. Sec'y Pennsylvania Dep't of Corr.*, 773 F.3d 472, 483 (3d Cir. 2014) (quoting *Zinermon v. Burch,* 494 U.S. 113, 132 (1990)). "Thus, where the pre-deprivation safeguards 'would be of use in preventing the kind of deprivation alleged,' the state must provide such a hearing." *Id.* (quoting *Zinermon,* 494 U.S. at 139).

But a pre-deprivation "hearing" does not necessarily mean an evidentiary hearing. "Ordinarily, a pre-deprivation hearing 'need not be elaborate.'" *Schmidt v. Creedon*, 639 F.3d 587, 596 (3d Cir. 2011) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985)). And "[i]n general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." *Loudermill*, 470 U.S. at 545 (quoting *Mathews*, 424 U.S. at 343). Often "[w]here adequate post-deprivation procedures are available," an individual "is entitled only to 'notice of the charges against him, an explanation of the [] evidence, and an opportunity to present his side of the story." *Schmidt*, 639 F.3d at 596 (quoting *Loudermill*, 470 U.S. at 545). "The hearing can be informal and 'need not definitively resolve the propriety' of the deprivation." *Id.* (quoting *Loudermill*, 470 U.S. at 545). "It should be an initial check against mistaken decisions— essentially, a determination of whether there are reasonable grounds to believe that the charges against the [individual] are true and support the proposed action." *Id.* at 596–97 (quoting *Loudermill*, 470 U.S. at 545).

Further, in limited circumstances, a post-deprivation hearing may satisfy due process such as where there is an emergency that requires "'quick action by the State,' or where 'providing any meaningful predeprivation process' would be impractical." *Elsmere Park Club*, 542 F.3d at 417 (quoting *Parratt v. Taylor*, 451 U.S. 527, 539 (1981)); *see also Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230,

14

240 (1988) ("An important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation.").

The Supreme Court addressed due process claims regarding driver's license suspensions or revocations in several cases. *Bell v. Burson*, 402 U.S. 535 (1971), involved a challenge to a Georgia law that "provide[d] that the motor vehicle registration and driver's license of an uninsured motorist involved in an accident shall be suspended unless he posts security to cover the amount of damages claimed by aggrieved parties in reports of the accident." *Id*. at 535–36 (footnote omitted).  Under that law, there was an opportunity for a pre-suspension administrative hearing, but that hearing "exclude[d] consideration of the motorist's fault or liability for the accident." *Id*. at 536.  There was also the opportunity for a statutory appeal *de novo* after the suspension. *Id*. at 538.  After concluding that once issued, a driver's license cannot be taken away without procedural due process, the Court determined that because liability for the accident was "an important factor in the State's determination to deprive an individual of his license[], the State may not, consistently with due process, eliminate consideration of that factor in its prior hearing." *Id*. at 539, 541.  The Court rejected Georgia's

contention that liability for the accident need not be considered prior to the

suspension:

> Finally, we reject Georgia's argument that if it must afford the
> licensee an inquiry into the question of liability that
> determination, unlike the determination of the matters presently
> considered at the administrative hearing, need not be made prior
> to the suspension of the licenses. While "[m]any controversies
> have raged about . . . the Due Process Clause," it is fundamental
> that except in emergency situations (and this is not one) due
> process requires that when a State seeks to terminate an interest
> such as that here involved, it must afford "notice and
> opportunity for hearing appropriate to the nature of the case"
> *before* the termination becomes effective.

*Id.* at 542 (italics in original) (footnote omitted) (quoting *Mullane v. Cent. Hanover*

*Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)).  The Court held that before Georgia

"may deprive petitioner of his driver's license and vehicle registration it must

provide a forum for the determination of the question whether there is a reasonable

possibility of a judgment being rendered against him as a result of the accident."

*Id*.

After *Bell*, the Supreme Court decided the seminal due process case of

*Mathews v. Eldridge*, 424 U.S. 319 (1976).  Highlighting that due process is

flexible and what process is due depends on the context and a balance of

governmental and private interests, *Mathews* set forth three factors for analyzing

procedural due process claims. *Id.* at 334–35.  Those factors are: "(1) the interest at

stake for the individual []citizen; (2) 'the risk of an erroneous deprivation of such

interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *B.C. v. Att'y Gen. United States*, 12 F.4th 306, 314–15 (3d Cir. 2021) (quoting *Mathews*, 424 U.S. at 335). The *Mathews* factors are used "[t]o determine what procedures the Constitution requires in a particular case, including whether pre-deprivation procedures are required and whether post-deprivation procedures are constitutionally adequate[.]" *Doe I v. Governor of Pennsylvania*, 977 F.3d 270, 275–76 (3d Cir. 2020) (Fisher, J., concurring).

In other cases involving driver's licenses decided after *Mathews*, the Supreme Court determined that due process did not require a pre-suspension evidentiary hearing.  For example, in *Dixon v. Love*, 431 U.S. 105, 106 (1977), the Court addressed "whether Illinois has provided constitutionally adequate procedures for suspending or revoking the license of a driver who repeatedly has been convicted of traffic offenses."  In that case, "[t]he statute and administrative regulations provide[d] for an initial summary decision based on official records, with a full administrative hearing available only after the suspension or revocation ha[d] taken effect." *Id*.  After analyzing the *Mathews* factors, the Court held that in

the context of the Illinois scheme, an evidentiary hearing was not required prior to suspension or revocation of a driver's license. *Id*. at 113–15.

Similarly, in *Mackey v. Montrym*, 443 U.S. 1, 19 (1979), the Court held that "a summary suspension effective pending the outcome of [a] prompt postsuspension hearing" satisfied due process.  That case involved a Massachusetts statute that mandated the suspension of the license of a driver who refused to take a breath-analysis test after being arrested for driving under the influence. *Id*. at 3. Before concluding that a pre-suspension evidentiary hearing was not required in that case, the Court analyzed the *Mathews* factors. *Id*. at 10–19.[3]

Because Templeton's arguments in support of her second motion for summary judgment are in many respects similar to the arguments she raised in her earlier motion for summary judgment, before proceeding further, we briefly review our discussion in connection with that prior motion for summary judgment.  In connection with Templeton's prior motion to summary judgment, we noted that the parties did not address *Dixon, Mackey,* or the *Mathews* factors. *Doc. 49* at 16.  And we concluded that Templeton's argument in her brief in support was insufficient to

---

[3] In *Illinois v. Batchelder*, 463 U.S. 1112, 1117–19 (1983), the Court also analyzed the *Mathews* factors in upholding a license suspension pursuant to Illinois' implied-consent statute.  In that case, the issue concerned how specific the affidavit required of the arresting officer had to be. *Id*. at 1115, 1117 n.3.  Under that statutory scheme, the driver had a right to a hearing before his license was suspended. *Id*. at 1117–19.

show that she was entitled to summary judgment. *Id*. After setting forth some general due process standards and summarizing the facts in this case, the totality of Templeton's argument consisted of one conclusory paragraph:

> It cannot be said that Plaintiff was denied his due process rights when, firstly, he refused multiple requests to re-test over the course of several months, and secondly, availed himself of an appropriate post-deprivation hearing, although he is clearly dissatisfied with the results. This hearing meets the required due process standard. As the Defendant has not violated the Fourteenth Amendment, summary judgment should be granted in her favor.

*Id.* at 16–17 (quoting *Doc. 44* at 6 (footnote omitted)). We noted that Templeton did not point to a case that is factually analogous to this case. *Id.* at 17. Rather, she cited cases from vastly different contexts without making any attempt to show how or why those cases apply in this case. *Id.* For example, Templeton cited *Postie v. Frederick*, 3:14-00317, 2015 WL 1219263, at *3 (M.D. Pa. Mar. 17, 2015), and *McKenna v. Portman*, 538 F. App'x 221, 224 (3d Cir. 2013), for the proposition that a post-deprivation remedy may satisfy due process. *Id.* Both of those cases concerned property that was seized pursuant to a search warrant, but Templeton did not explain how that situation is analogous to situation in this case. *Id.* at 17–18.

In further support of her contention that a post-deprivation hearing satisfies due process, Templeton cited *Doheny v. Pennsylvania*, 781 F. App'x 106 (3d Cir. 2019). *Id.* at 18. In that case, Doheny's driver's license was suspended after he

was convicted and sentenced for two violations of the Pennsylvania Vehicle Code. *Doheny*, 781 F. App'x at 108. Citing *Dixon*, the court in *Doheny* stated: "While the Fourteenth Amendment's Due Process Clause applies to the deprivation of a driver's license, a post-deprivation hearing and appeal process satisfy due process." *Id.* at 113. We observed that as an unpublished decision, *Doheny* is not binding on this court. *Doc. 49* at 18. Moreover, we continued, *Doheny* is distinguishable from this case. *Id.* Here, James contends that he was not provided with a pre-deprivation opportunity to be heard. *Id.* But in *Doheny*, the court noted that PennDOT notified Doheny "of a thirty-day window to appeal the suspensions before they became effective." *Id.* (quoting *Doheny*, 781 F. App'x at 108). Templeton did not assert that there was any such pre-suspension window for appeal for James in this case. *Id.* Nor did she address the importance—or unimportance—of that distinction. *Id.*

We also noted that although a post-deprivation hearing may satisfy due process where there is an emergency requiring quick action or where providing meaningful pre-deprivation process would be impractical, Templeton did not argue that there was an emergency or that providing some, however informal, pre-deprivation process would have been impractical. *Id.* at 18–19. In sum, we concluded, given the deficient briefing, Templeton had not shown that she is entitled to judgment as a matter of law. *Id.* at 19. Thus, we denied her motion for

summary judgment. *Id*.  But because "[t]he *Mathews* balancing test is to be applied by the court, as a question of law, and *not* by a jury," *Smith v. Borough of Dunmore*, No. 3:05-CV-1343, 2011 WL 1541293, at *2 (M.D. Pa. Apr. 22, 2011) (italics in original), we denied Templeton's motion for summary judgment without prejudice to her filing another motion that is properly briefed and supported. *Id*. We also noted that in his opinion denying James's appeal, Judge Vough ordered that "the downgrade of Petitioner's commercial driver's license to a non-commercial Class C is reinstated." *Id*. at 20 (quoting *doc. 43-1* at 8).  We observed that the use of the word "reinstated" may suggest that James was able to use his CDL while his appeal was pending. *Id*.  And whether he was able to use his CDL while his appeal was pending may bear on the *Mathews* factors. *Id*. at 21.  The parties had not, however, addressed that issue. *Id*.  We noted that they should do so in connection with any subsequent motion for summary judgment. *Id*.

Templeton's brief in support of her second motion for summary judgment again relies on *Postie*, 2015 WL 1219263, *McKenna*, 538 F. App'x 221, and *Doheny*, 781 F. App'x 106, to support her contention that the hearing that James received in the Court of Common Pleas satisfied due process. *Doc. 74* at 5–6, 8.  In her brief in support of her second motion for summary judgment, however, Templeton also includes a discussion of the *Mathews* factors. *Id*. at 7–8.  And Templeton asserts that because James retained his license during the appeal to the

Court of Common Pleas, this case is similar to the facts of *Doheny*, where the
Third Circuit concluded that the appeal to the Court of Common Pleas satisfied due
process. *Id*.

We agree with Templeton that balancing the *Mathews* factors shows that
James received due process.  The first *Mathews* factor—the interest at stake for
James—weighs in favor of James as he had an interest in this CDL designation and
that designation affected his employability as a CDL driver.  The second *Mathews*
factor—the risk of an erroneous deprivation and the probable value, if any, of
additional or substitute procedural safeguards—favors Templeton.  James had the
opportunity (which he took) to appeal the downgrade of his license to the Court of
Common Pleas, where he had an evidentiary hearing with the opportunity to
present evidence, to present witnesses, and to cross-examine witnesses. *See doc.
73-2* (transcript of hearing).  And as Templeton has now shown, James was able to
keep his CDL designation while his appeal to the Court of Common Pleas was
pending.  Further, James had the opportunity (which he took) to appeal to the
Commonwealth Court.  Given these procedures, there is little risk of an erroneous
deprivation, and no reason to believe that additional safeguards would have
provided any additional value.  The third *Mathews* factor—the Government's
interest—also favors Templeton as the state has a compelling interest in making
sure that CDL drivers have the proper skills and qualifications, and a valid test is a

reasonable measure to assure such.  In sum, balancing the *Mathews* factors, we conclude that James was provided with due process.

Although the only claim that James pleaded in his amended complaint is a procedural due process claim, in his brief in opposition to Templeton's second motion for summary judgment, he mentions the Fourth and Sixth Amendments and he complains that he was not provided the procedures that are usually provided in a criminal case.  In addition to not pleading such claims, this case is different from a criminal case.  James was not accused of any wrongdoing.  Rather, he—along with 176 others—was required to take a retest due to concerns over the testing procedures initially used when he obtained his CDL.  Thus, James's invocation of criminal-law concepts misses the mark.

## VI.  Conclusion.

For the foregoing reasons, we will grant Templeton's second motion (*doc. 55*) for summary judgment.  An appropriate order follows.


<u>**S/Susan E. Schwab**</u>
Susan E. Schwab
United States Magistrate Judge